UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TOM WOOTON,

    Plaintiff,

v.                                                     Case No. 6:19-cv-419-Orl-37GJK

STEELMASTER INDUSTRIES, INC.,

    Defendant.
_____

## ORDER

Plaintiff Tom Wooton sues his former employer Defendant Steelmaster Industries, Inc. ("**Steelmaster**") under the Fair Labor Standards Act ("**FLSA**") for unpaid overtime compensation on behalf of himself and all others similarly situated. (Doc. 23.) Before the Court is Plaintiff's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members. (Doc. 38 ("**Motion**").) Steelmaster opposes. (Doc. 41.) On review, the Motion is denied.

### I.     BACKGROUND

Plaintiff worked as a "non-exempt hourly paid laborer" for Defendant from May 13, 2013 through July 31, 2018. (Doc. 38-1, ¶ 4.) His job duties included physical labor and, as Steelmaster tells it, Plaintiff was a designated "Driver" whose regular job duties required him to: (1) drive a company vehicle from Steelmaster's office to the jobsite at the start of the day; and (2) return the vehicle to Steelmaster's office at the end of the day. (*See* Doc. 38-1, ¶¶ 6, 9 (Plaintiff's affidavit describing job duties); Doc. 41-1, pp. 2–4, ¶¶ 6–9,

13 (Steelmaster's owner's affidavit).) Plaintiff claims Steelmaster "has a policy and practice of failing to pay hourly paid laborers, like [him] and [his] similarly-situated co-workers, full and proper overtime hours" for certain driving-related duties: (1) driving from jobsites to Steelmaster's office; (2) cleaning vehicles at the end of each day; (3) loading water coolers; (4) loading and off-loading trucks and/or trailers; and (5) fueling trucks, equipment, and gasoline cans. (Doc. 38, pp. 3, 5–6; Doc. 38-1, ¶ 9.) He thus seeks conditional certification and notice to this proposed class:

> All persons employed as hourly paid laborers for Defendant for the past three years (plus any applicable tolling) from the date of the Complaint to the present who worked more than forty (40) hours in one or more workweeks, who were not paid full and proper overtime compensation for all hours worked due to Defendant's timekeeping practices.

(Doc. 38, p. 1.)

Since Plaintiff filed this action, five individuals have opted in (collectively, "**Opt-Ins**"). (Doc. 3 (James McHugh); Doc. 4 (Ryan Jarkovsky); Doc. 7 (Alan Stitts); Doc. 35 (Kevin Ryan); Doc. 37 (David Kahle).) Plaintiff submits their declarations in support of his Motion. (Docs. 38-2–38-6 ("**Opt-In Declarations**").) The Opt-In Declarations mirror Plaintiff's, save for different employment dates and hourly rates, citing the same driving-related practices as Steelmaster's unlawful policy and practice. (Docs. 38-2–38-3, 38-6, ¶¶ 9–11; 38-4–38-5, ¶¶ 10–12.)

Steelmaster opposes on the basis that Plaintiff has failed to establish that: (1) others desire to join the lawsuit; and (2) Plaintiff and the Opt-Ins are similarly situated to other Steelmaster employees. (Doc. 41, pp. 11–17.) Steelmaster notes that Plaintiff and the Opt-Ins are all "Drivers," a small subset of Steelmaster employees accorded special driving-

related duties not shared by employees not designated as "Drivers." (Doc. 41, pp. 3–6.) So, Steelmaster argues, Plaintiff and the Opt-Ins' experience cannot speak to a failure to pay overtime to "Non-Drivers," which precludes conditional certification. (*Id.* at 11–17.) In support, Steelmaster submits eight declarations—three from drivers (Doc. 41-1, pp. 6–9, 14-18, 32–35), four from laborers (*id.* at 10–13, 19–31), and one from Steelmaster's owner (*id.* at 1–5). Briefing complete, the Motion is ripe.

## II. LEGAL STANDARDS

The FLSA authorizes aggrieved employees to maintain actions for FLSA violations on their own behalf and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). District courts have wide discretion in determining how to manage a collective FLSA action, and the U.S. Court of Appeals for the Eleventh Circuit has sanctioned a two-tiered approach to decide whether an action should proceed collectively:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a "representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995)); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008).

District courts are not required to use this two-stage procedure. *Hipp*, 252 F.3d at 1219. The Eleventh Circuit has acknowledged that the two-tiered certification procedure "may be most useful when making a certification decision early in the litigation before discovery has been completed." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007).

### III.   ANALYSIS

Based on the procedural posture, the Court adopts the Eleventh Circuit's two-stage procedure for certification and management of this FLSA collective action. The Court's inquiry at the notice stage turns on whether: (1) there are other employees "who desire to opt in" to the action; and (2) the employees who desire to opt in are "similarly situated." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991). The burden is on Plaintiff to "demonstrat[e] a 'reasonable basis' for [his] claim of class-wide discrimination." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983)). Plaintiff "may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage [the] defendant['s] affidavits to the contrary." *Id.* (citation and quotation marks omitted). Ultimately, the district court must satisfy itself that there are other employees who are similarly situated and who desire to opt in. *Dybach*, 942 F.2d at 1567–68. The Court takes each in turn.

### A. Potential Opt-In Employees

First is whether Plaintiff has met his "burden of demonstrating a reasonable basis for crediting [his] assertion[] that aggrieved individuals exist[] in the broad class that [he] proposed." *Haynes*, 696 F.2d at 887. This burden is not onerous; it can be met by filing affidavits, consents to join, and other evidence from non-named employees who are interested in opting into the action. *See Kubiak v. S.W. Cowboy, Inc.*, No. 3:12-cv-1306-J-34JRK, 2014 WL 2625181, at *8 (M.D. Fla. June 12, 2014); *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1334 (M.D. Fla. 2007). Yet it requires more than "unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs [will] come [forward]." *Haynes*, 696 F.2d at 887. Indeed, "[c]ertification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit." *See Vondriska*, 564 F. Supp. 2d at 1334.

Here, Plaintiff offers his and the Opt-Ins' Declarations to demonstrate others are interested in joining this action to merit conditional certification. (*See* Doc. 41, pp. 2–6, 13–14.) To that end, Plaintiff's declaration states, "I am aware that four (4) additional employees have already opted into this lawsuit, prior to any notice being issued" and "[t]his demonstrates that other employees desire to join this lawsuit, and others will join, if notice is facilitated." (Doc. 38-1, ¶¶ 11–12.) The Opt-Ins' Declarations say the same, without the numerical reference: "I am aware that other employees have already opted into this lawsuit, prior to any notice being issued" and "[t]his demonstrates that other employees desire to join this lawsuit, and others will join, if notice is facilitated." (Docs. 38-2–38-3, 38-6 ¶¶ 12–13; Doc. 38-4–38-5, ¶¶ 13–14.) The Opt-In Declarations add,

"During my employment, I believe there are between thirty (30) to forty (40) employees who were employed as laborers, like me, who were paid hourly, like me, who performed the exact or substantially similar duties I performed, who worked overtime hours like me, and who were not paid full and proper overtime compensation for all overtime hours worked per week." (Docs. 38-1, ¶ 14; Doc. 38-2–38-3, 38-6 ¶ 15; Docs. 38-4–38-5, ¶ 16.) With this, Plaintiff submits that more Steelmaster employees will join if provided notice. (Doc. 38, pp. 13–14.)

The Court is not convinced. Plaintiff's and the Opt-Ins' Declarations lack specificity—in terms of numbers, interest, and identifiable Steelmaster employees who would *actually* join if this action were conditionally certified—and are "speculative, vague and conclusory." *Rodgers v. CVS Pharmacy*, No. 8:05-CV770T-27MSS, 2006 WL 752831, at *4 (M.D. Fla. Mar. 23, 2006). They also fail to grapple with Steelmaster's declarations from laborers and drivers that specifically opine on other employees' interest in joining this action—despite solicitation, other Steelmaster employees aren't interested and not all laborers drove company vehicles. *See id.*; (*see* Doc. 48-1, pp. 9, 13, 18, 24, 27, 31, 35.) Without such details, Plaintiff has failed to meet his burden to demonstrate other Steelmaster employees—beyond the Opt-Ins who are already party plaintiffs— desire to opt-in to this lawsuit. *See Mickles on behalf of herself v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) ("[T]hose who opt in become party plaintiffs upon the filing of a consent and that nothing further, including conditional certification, is required." (citing *Prickett*

*v. DeKalb Cty.*, 349 F.3d 1294, 1296 (11th Cir. 2003))); *Rodgers*, 2006 WL 752831, at *5.[1]

On this basis alone, the Motion is due to be denied. *See Rappaport v. Embarq Mgmt. Co.*, 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007) ("[F]ederal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where, as here, the plaintiffs attempt to certify a broad class based only [on] the conclusory allegations of few employees."); *see also Kelley*, 2014 WL 10248251, at *2 n.2 (collecting cases). Nonetheless, the Court continues its analysis.

### B. Similarly Situated Employees

Even if Plaintiff had sufficiently demonstrated that others desire to opt in, he has not shown that he is similarly situated to the potential class plaintiffs for which he seeks certification. *See Rodgers*, 2006 WL 752831, at *5. "At the notice stage, the 'similarly situated' requirement is particularly lenient." *Monserrate v. Hartford Fire Ins. Co.*, No. 6:14-cv-149-Orl-37GJK, 2015 WL 4068388, at *3 (M.D. Fla. July 2, 2015). "Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Grayson*, 79 F.3d at 1096 (citation and internal quotation marks omitted).

---

[1] *See also, e.g., Kelley v. Taxprep1, Inc.*, No. 5:13-cv-451-Oc-22PRL, 2014 WL 10248251, at *2 (M.D. Fla. Apr. 2, 2014) (finding that the plaintiffs' "four cut-and-paste, form affidavits . . . are insufficient" to satisfy their burden); *Calvo v. Summit Broadband Inc.*, No. 2:16-cv-746-FtM-38MRM, 2018 WL 3635104, at *9–10 (M.D. Fla. Apr. 17, 2018) (finding that the plaintiff failed to satisfy his burden when he provided only "three cut-and-paste, form declarations" that fail to identify names or details about others who wish to join and are full of speculative, vague, and conclusory allegations); *Kubiak*, 2014 WL 2625181, at *10 ("Plaintiffs' conclusory statements and 'mere belief or unsupported expectations' that others desire to join, without providing any specific facts to support their belief that other employees are interested in opting in, do not provide a sufficient basis for certification." (citing multiple cases in support)).

Courts look to "pay provisions" and "job requirements" to determine whether different employment positions are "similar." *Dybach*, 942 F.2d at 1567–68. However, "[a] plaintiff must make 'substantial' and 'detailed' allegations supported by affidavits to satisfy the 'similarly situated' element." *Palacios v. Boehringer Ingelheim Pharms., Inc.*, No. 10-22398-Civ-UU, 2011 WL 6794438, at *5 (citing *Grayson*, 79 F.3d at 1097). And "[f]ederal courts routinely decline to certify collective action when the plaintiff's assertions are conclusory or lack evidentiary foundation." *Id.* (citing *Haynes*, 696 F.2d at 887–88).

Here, Plaintiff represents that he and the Opt-Ins worked as "laborers" and seeks to certify a class of all laborers paid "straight time" for overtime hours worked. (Doc. 23, ¶¶ 18–28.) Their failure to pay overtime claim is then based on Steelmaster's policy and practice of not paying laborers for driver-related duties, as Plaintiff and the Opt-Ins were all Drivers. (Docs. 38-1–38-3, 38-6, ¶¶ 2–16; Docs. 38-4–38-5, ¶¶ 2–17.) Steelmaster, however, has presented evidence that the job duties of Drivers, like Plaintiff and the Opt-Ins, differ from Non-Drivers; and those duties which Plaintiff and the Opt-Ins contend form the basis of their FLSA claim are performed only by Drivers. (Doc. 41, pp. 11–14 (citing Steelmaster employees' declarations).) In turn, Plaintiff's evidence does not speak to these differing job duties and the impact of this distinction in forming a class of "similarly-situated" employees. (*See* Docs. 38-1–38-3, 38-6, ¶¶ 2–16; Docs. 38-4–38-5, ¶¶ 2–17.) Rather, Plaintiff provides form declarations that conclusorily assert all laborers were subject to unlawful overtime compensation practices. (*See* Docs. 38-1–38-3, 38-6, ¶¶ 2–16; Docs. 38-4–38-5, ¶¶ 2–17.) This will not do. *See Calvo*, 2018 WL 3635104, at *11 (relying on *Kelley*, 2014 WL 10248251, at *2, to find that the plaintiffs' "three cut-and-paste

form declarations . . . consist[ing] of conclusory assertions . . . are not probative of the similarly situated question").[2]

As it stands, Plaintiff's generalized allegations of commonality with putative class members—all Steelmaster laborers, including Non-Drivers—and of class-wide FLSA violations fail to overcome Steelmaster's detailed affidavits to the contrary. *See, e.g.*, *Haynes*, 696 F.2d at 887–88 (affirming district court decision declining to authorize class notice where there were only unsupported allegations of widespread FLSA violations); *Holmes v. Quest Diagnostics, Inc.*, No. 11-80567-Civ-WILLIAMS, 2012 WL 12876965, at *2–3 (S.D. Fla. June 14, 2012) (finding that vague allegations in plaintiff's nearly identical declarations "lack sufficient detail and do not 'successfully engage' [the defendant's declarations] indicating that the [p]laintiffs are not similarly situated"). Thus, Plaintiff has not met his burden of showing that conditional certification is warranted here. *See Grayson*, 79 F.3d at 1095 (finding that plaintiffs must make "substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary").

In sum, Plaintiff has failed to demonstrate that "there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements

---

[2] *See also Palacios*, 2011 WL 6794438, at *5 (finding that cut-and-paste, conclusory declarations lacking meaningful detail "fall short of the 'substantial' and 'detailed' allegations necessary to satisfy the 'similarly situated' element."); *Rodgers*, 2006 WL 752831, at *5–6 (finding declarations lacking job requirements or descriptions insufficient to evaluate similarities between potential class members); *Hipp*, 252 F.3d at 1219 (finding that generalized and unsupported allegations fail to establish the similarity requirement).

and with regard to their pay provisions." *See Dybach*, 942 F.2d at 1567–68. The Motion is denied.[3]

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members (Doc. 38) is **DENIED.**

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 10, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record

---

[3] Because the Court declines to conditionally certify the putative class and to authorize the dissemination of the proposed notice, the Court need not address Steelmaster's concerns regarding the proposed notice. (*See* Doc. 41, pp. 17–20.)